UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RYAN WHITSON,

        Petitioner,                                        Case No. 18-cv-11607
                                                              Hon. Matthew F. Leitman

v.

NOAH NAGY,[1]

        Respondent.
_____/

## ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS, (2) DENYING A CERTIFICATE OF APPEALABILITY, AND (3) GRANTING PERMISSION TO APPEAL IN FORMA PAUPERIS

Petitioner Ryan Whitson is a state prisoner in the custody of the Michigan Department of Corrections. On May 22, 2018, Whitson filed a petition for a writ of habeas corpus in this Court pursuant to 28 U.S.C. § 2254. (*See* Pet., ECF No. 1.) In the petition, Whitson seeks relief from his state-court convictions of three counts of first-degree criminal sexual conduct and two counts of third-degree criminal sexual conduct involving his two daughters. (*See id.*) Whitson claims that (1) the state trial court violated his rights under the Fourteenth Amendment when the court did not declare a mistrial after a similar-acts witness whom the prosecution identified and discussed during opening statements did not appear at trial, (2) the state trial court

_____

[1] The Court corrects the spelling of Respondent's name.

erroneously prevented him from cross-examining one of his daughters about her sexual history, and (3) he was denied the effective assistance of trial and appellate counsel. (*See id.; See also* ECF No. 10.)  Respondent filed an answer asserting that the claims are procedurally defaulted and without merit. (*See* Ans., ECF No. 14.) Whitson thereafter filed a reply. (*See* Whitson Reply, ECF No. 15.)

The Court has carefully reviewed the record and concludes that Whitson has failed to show that he is entitled to federal habeas relief.  His petition for a writ of habeas corpus is therefore **DENIED**.

## I

## A

The charges against Whitson arose when his two daughters – whom the Court will refer to as MW and RW – accused him of sexually assaulting them over the course of several years.  The Michigan Court of Appeals described the relevant factual background of the charges against Whitson and his convictions as follows:

> This case arises from a series of sexual assaults committed by defendant against his daughters, MW and RW, over several years. Both girls testified that defendant's assaults began when they were approximately nine years old, at which time the family was living in Toledo, Ohio. Both girls reported that defendant forced them to engage in vaginal intercourse and fellatio and that defendant's sexual assaults continued after the family moved to Taylor, Michigan in 2011. Neither MW nor RW was aware of the assaults on the other until MW confronted defendant on October 5, 2014. As a result of MW's disclosure, RW

came forward and stated that defendant had also molested her for several years.

Before trial, the prosecution endorsed [another alleged victim,] NS as a witness for trial. The prosecution intended to call NS to testify that she had engaged in a sexual relationship with defendant when she was 14 years old. NS was subpoenaed but did not appear for trial. Defense counsel did not object to NS's absence.

Dr. Dena Nazer, a pediatrician at Children's Hospital of Michigan and Kids Talk Children's Advocacy Center, testified that she had performed examinations, including genital examinations, on MW and RW in November 2014 to look for signs of injury or sexually transmitted infections. Dr. Nazer testified that RW's examination results were "normal," and described MW's examination results as follows:

> [S]he had something that we called an indeterminate finding or a finding that there's no consensus on. What that means simply is that it's a finding that supports her disclosure so it's not a finding that we would consider normal. It's not considered not normal on its own but if a child gives a disclosure that sexual abuse happens or happened then it would support their disclosure.

Dr. Nazer stated that a "supportive finding" is not considered either normal or abnormal in the absence of an allegation of sexual abuse.

Before defense counsel began to cross-examine MW, the prosecution informed the trial court that it objected to any efforts by defendant to elicit testimony concerning MW's sexual activity with other partners. Defense counsel initially argued that evidence of MW's sexual activity should be admissible in light of Dr. Nazer's testimony regarding the results of her genital examination; however, counsel later conceded that the exceptions found in the

>rape-shield statute, [Mich. Compl. Laws §] 750.520j, did
>not apply to such evidence. The trial court held that the
>testimony was precluded by the rape-shield statute.
>Defendant was [then] convicted and sentenced […].

*People v. Whitson*, 2017 WL 1367108, at *1 (Mich. Ct. App. Apr. 13, 2017).

**B**

Following his convictions and sentence, Whitson filed a claim of appeal in the

Michigan Court of Appeals. His appellate counsel filed a brief that raised the

following claims:

>I. The Court allowed the prosecution to introduce
>prejudicial, inflammatory evidence about how [NS] would
>testify and then allowed the prosecution to waive her
>presence, to the extreme prejudice of the Defendant.
>
>II. The Court erred in excluding evidence of other sexual
>contact for [MW or RW], as the court apparently
>misunderstood and misconstrued the rape shield law
>resulting in extreme prejudice to the Defendant.

The Michigan Court of Appeals affirmed Whitson's convictions in an

unpublished opinion. *See id.*

Whitson then filed a *pro se* application for leave to appeal in the Michigan

Supreme Court.  That application only raised one claim:

>I. This Court should grant the Defendant's Application for
>Leave to Appeal the order of the Court of Appeals, where
>that court found that although the trial court erred and
>should have allowed evidence about the alleged victim's
>sexual history that was admissible under the rape shield
>law, the evidence would have been harmless.

The Michigan Supreme Court denied the application because it was not persuaded that the question presented should be reviewed by the court. *See People v. Whitson*, 901 N.W.2d 607 (Mich. 2017) (Table).

Whitson then filed this habeas action, raising the two claims that he raised in the Michigan Court of Appeals. (*See* Pet., ECF No. 1, PageID.2.) He also filed a motion to hold the petition in abeyance so that he could exhaust additional claims in state court. (*See* Mot., ECF No. 3, PageID.16-19.) The Court granted that motion. (*See* Order, ECF No. 7.)

Whitson returned to the state trial court and filed a *pro se* motion for relief from judgment that raised the following claims:

> I. Trial counsel was constitutionally ineffective when he failed to investigate witnesses defendant told him about before trial; and appellate counsel was ineffective for not raising this issue on appeal that is clearly stronger than the issues she raised.
>
> II. Trial counsel was constitutionally ineffective when he failed to object to the prosecution's introduction of prejudicial and inflammatory evidence about NS without producing the endorsed witness and failed to move for a post-trial evidentiary hearing or new trial to preserve the issue; and appellate counsel was ineffective for failing to raise this issue in the trial court or on appeal.
>
> III. Appellate counsel was constitutionally ineffective when she failed to investigate and raise trial counsel's errors that defendant told her about, to the trial court in a motion for evidentiary *Ginther* hearing, and challenge the trial court's errors under ineffective assistance of trial counsel on defendant's only appeal of right.

(St. Ct. Mot., ECF No. 15-11.)  The trial court denied the motion in a written opinion. (*See* St. Ct. Op., ECF No. 15-12.)

Whitson then filed an application for leave to appeal in the Michigan Court of Appeals, raising the same three claims that he raised in his motion for relief from judgment. (*See* ECF No. 15-14.)  That court denied the application for leave to appeal because Whitson "failed to establish that the trial court erred in denying the motion for relief from judgment." (Mich. Ct. of App. Order, ECF No. 15-14, PageID.847.) Whitson then filed an application for leave to appeal in the Michigan Supreme Court. (*See* ECF No. 15-16.)  That court denied leave to appeal under Michigan Court Rule 6.508(D). *See People v. Whitson*, 953 N.W.2d 395 (Mich. 2021) (Table).

Finally, Whitson returned to this Court and asked the Court to re-open this case and rule on all of his claims. (*See* Mot., ECF No. 10.)  The Court granted that motion on November 8, 2021. (*See* Order, ECF No. 11.)

## II

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires federal courts to uphold state court adjudications on the merits unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in

light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"The question under AEDPA is not whether a federal court believes the state court's

determination was incorrect but whether that determination was unreasonable—a

substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

## III

## A

Whitson first claims that the state trial court violated his rights under the

Fourteenth Amendment when it did not declare a mistrial related to the failure of

witness NS to appear at trial. (*See* Pet., ECF No. 1, PageID.2.)  More specifically,

Whitson says that (1) during opening statements the prosecution told the jury that

NS would appear and testify about Whitson's sexual relationship with her when she

was fourteen years old, (2) NS did not appear at trial, (3) the prosecution nonetheless

introduced evidence about Whitson's sexual relationship with NS through other

witnesses, and (4) at some point during the trial, it "became apparent to the court

that [NS] would not be present to testify," but the court did not declare a mistrial.

(*Id.*)  Whitson insists that the trial court's failure to declare a mistrial under these

circumstances violated his right to due process under the Fourteenth Amendment.

(*See id.*)

Whitson is not entitled to federal habeas relief on this claim because it is

procedurally defaulted.   "'State prisoners must give the state courts one full

opportunity to resolve any constitutional issues by invoking *one complete round* of the State's established appellate review process.'" *Mammone v. Jenkins*, 49 F.4th 1026, 1047 (6th Cir. 2022) (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)) (emphasis added). "When a petitioner has failed to present a claim to the state courts and no state remedy remains available, the claim is technically exhausted and procedurally defaulted." *Id.* Here, Whitson failed to present this constitutional claim to the state courts, and no state remedy remains available related to this claim. The claim is therefore procedurally defaulted.

First, Whitson never presented this constitutional claim in state court. While Whitson did raise a claim on direct appeal in the Michigan Court of Appeals related to the trial court's treatment of NS's non-appearance, that claim was brought under state law, not under the Fourteenth Amendment. (*See* ECF No. 15-13, PageID.776-779.) Indeed, the words "constitution," "Fourteenth Amendment," and "due process" do not appear in that section of Whitson's appellate brief. (*See id.*) Moreover, Whitson never raised *any* claim related to the trial court's treatment of NS's non-appearance on direct appeal in the Michigan Supreme Court. As explained above, Whitson raised only one claim on direct appeal in that court: that the trial court should have allowed Whitson to present evidence about MW's sexual history. (*See* ECF No. 15-15, PageID.919.) And Whitson did not raise this claim in his motion for relief from judgment that he filed in the state trial court under Michigan

8

Court Rule 6.500 *et seq.* (*See* ECF No. 15-11, PageID.673-679, raising only ineffective assistance of counsel claims.) Thus, Whitson did not raise this constitutional claim in state court.

Second, there is not any state remedy now available to Whitson related to this constitutional claim. As explained above, Whitson already completed his direct appeals. And he filed a post-appeal motion for relief from judgment in the Michigan trial court. "As of 1995, Michigan allows only one postconviction motion for relief from judgment" under Rule 6.500. *Banks v. Jackson*, 149 F. App'x 414, 418 (6th Cir. 2005) (citing Mich. Ct. Rule 6.502(G)(1)). "A second or successive motion is permitted only if based on a retroactive change in the law, or if based on 'a claim of new evidence that was not discovered before the first such motion.'" *Id.* (quoting Mich. Ct. Rule 6.502(G)(2)). Whitson has neither attempted to make nor made either showing here. Thus, because Whitson has completed his appeals and has not shown that he has a right to file a second motion for relief from judgment, there is no state remedy available to him related to this claim.

Finally, while a procedural default may be excused, Whitson has not shown that his procedural default should be excused here. While Whitson does assert that his attorneys rendered ineffective assistance of counsel with respect to NS's non-appearance, and while ineffective assistance may in some instances excuse a procedural default, *see Chase v. MaCauley*, 971 F.3d 582, 592 (6th Cir. 2020)

(recognizing that ineffective assistance of counsel may excuse a procedural default), for all of the reasons explained below (*see* Section (III)(C)(4)), Whitson has not established that his attorneys were ineffective related to NS's failure to appear at trial.

For all of these reasons, Whitson is not entitled to federal habeas relief on this claim.

**B**

Whitson next claims that the state trial court improperly prohibited him from cross-examining MW about whether she had sexual intercourse with other individuals. Whitson's theory was that if MW had sexual intercourse with someone else, that could have provided an alternative explanation to sexual abuse for the findings made during Dr. Nazer's examination of MW. And Whitson asserts that state trial court erred when it held that this line of inquiry was prohibited by Michigan's rape-shield statute.

Whitson raised this claim on direct review in the Michigan Court of Appeals, and that court denied the claim on the basis that any error by the trial court with respect to that evidence was harmless:

> Defendant also argues that the trial court erred by finding that he was precluded by the rape-shield statute, MCL 750.520j, from inquiring into MW's sexual activities with others. Defendant argues that the trial court should not have excluded that evidence because Dr. Nazer testified that her physical examination of MW's genital region

resulted in an "indeterminate finding" that could be supportive of sexual abuse. Consequently, evidence regarding other sexual activities was admissible as rebuttal evidence to provide an alternative explanation for Dr. Nazer's findings. We conclude without deciding the issue that any error that arose from the exclusion of this evidence was harmless.

[….]

[W]e conclude that any error in excluding the evidence in this case was harmless. The probative value of the excluded evidence was not as significant as that at issue in *Shaw*. The *Shaw* Court opined that the complainant's ongoing sexual relationship at the time of her physical examination was highly relevant because the physician "essentially testified that the hymenal changes were consistent with those of either a sexually active adult woman or an abused child." *Id*.

Thus, without evidence of the complainant's sexual relationship with her boyfriend, "there was no likely explanation, other than [the] defendant's guilt," to explain the physical condition reported by the physician. *Id*. By contrast, Dr. Nazer's testimony regarding the implications of her findings was far less definitive. Dr. Nazer reached an "indeterminate finding" regarding the condition of MW's hymen, and explained that while such a finding is "supportive" of the complainant's disclosure, it is not considered abnormal in the absence of allegations of sexual abuse. The natural implication of Dr. Nazer's testimony is that the results of MW's medical examination were inconclusive regarding whether MW had engaged in any sexual activity that would have compromised the condition of her hymen—regardless of whether that activity occurred with defendant or others.

Moreover, it is improbable that the outcome of the trial would have been different if defendant had been allowed to introduce evidence that MW was sexually active with

11

others before she was examined by Dr. Nazer. Although MW did not describe the sexual encounters that occurred in Taylor in great detail, she unequivocally testified that defendant engaged in vaginal intercourse with her at their house. She also stated that when they left the house together, defendant would drive to isolated locations and make her put his penis in her mouth. The testimony of a complainant in a CSC prosecution need not be corroborated. MICH. COMP. LAWS § 750.520h; *People v. Brantley*, 296 Mich. App. 546, 551 (2012).

Moreover, the jury also convicted defendant of the CSC-I charges stemming from RW's accusations, regardless of the fact that Dr. Nazer reported that RW's examination results were normal. Thus it does not appear that the jury placed disproportionate weight on Dr. Nazer's indeterminate finding or the lack of evidence of other sexual activity by MW.

*Whitson*, 2017 WL 1367108, at \*7.

Where, as here, a state court determines that a constitutional error at trial is harmless, a habeas petitioner is not entitled to federal habeas relief unless he can satisfy both the test outlined in *Brecht v. Abrahamson*, 507 U.S. 619 (1993), and the test that Congress prescribed in AEDPA. *See Brown v. Davenport*, 596 U.S. 118, 122 (2022). The *Brecht* test for harmless error "ask[s] whether the error 'had [a] substantial and injurious effect or influence in determining the jury's verdict.'" *Ruelas v. Wolfenbarger*, 580 F.3d 403, 411 (6th Cir. 2009) (quoting *Brecht*, 507 U.S. at 623). A "substantial and injurious effect or influence" means "actual prejudice." *Brecht*, 507 U.S. at 637-38. On the other hand, "AEDPA asks whether every fairminded jurist would agree that an error was prejudicial." *Brown*, 596 U.S. at 135.

12

"In sum, where AEDPA asks whether *every* fairminded jurist would agree that an error was prejudicial, *Brecht* asks only whether a federal habeas court *itself* harbors grave doubt about the petitioner's verdict." *Id.* at 136 (emphasis in original).

Whitson is not entitled to relief on this claim because he cannot show that under AEDPA, every fair-minded jurist would agree that the error here was prejudicial. Most importantly, it does not appear that the results of MW's physical examination played a significant role in the outcome of the trial. Indeed, the jury convicted Whitson of abusing *both* MW and her sister RW even though RW's physical examination did *not* show any signs of injury or sexually transmitted infections. That suggests that the evidence related to Dr. Nazer's physical examinations did not play a prominent role in the jury's finding of guilt. Thus, it was not unreasonable for the Michigan Court of Appeals to conclude that Whitson was not prejudiced by his inability to attempt to show that Dr. Nazer's examination findings concerning MW were tied to MW's prior sexual history.

Moreover (and in any event), Dr. Nazer's physical examination findings did not provide strong support for the prosecution's allegations. In fact, Dr. Nazer testified that her examination of MW neither ruled-in nor ruled-out abuse. (*See* 9/14/2015 Trial Tr., ECF No. 15-9, PageID.568.) For all of the reasons explained above, the Court cannot conclude that it was unreasonable for the Michigan Court of Appeals to find that Whitson did not suffer prejudice here where MW's physical

13

examination was not an essential part of the prosecution's case.  Whitson is therefore not entitled to federal habeas relief on this claim.

## C

Finally, Whitson asserts in his third and fourth claims that he was denied the effective assistance of counsel. He first says that his trial counsel failed to interview his sister, Michelle Whitson, and MW's boyfriend, Joseph Sinclair. Next, Whitson says that his trial counsel failed to object to the prosecutor's references to NS during opening statements and to object to the presentation of evidence about Whitson's relationship with NS. Finally, Whitson argues that his appellate counsel was ineffective for failing to raise these claims on direct appeal.   Respondent asserts that review of the claims is barred by Whitson's procedural default under Michigan Court Rule 6.508(D)(3) and that they are without merit.  Because it is not clear to the Court whether the claims were procedurally defaulted, the Court will follow the less-complicated course and resolve Whitson's ineffective-assistance claims on their merits. *See Lambrix v. Singletary*, 520 U.S. 518, 525 (1997).  For the reasons explained below, none of Whitson's ineffective assistance claims entitle him to habeas relief.

14

**1**

An ineffective assistance of counsel claim has two components. A petitioner must show that counsel's performance was deficient and that the deficiency prejudiced the defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To meet the first *Strickland* prong, a petitioner must establish that his attorney's representation "fell below an objective standard of reasonableness." *Id*. at 688. In doing so, the petitioner must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that ... the challenged action 'might be considered sound trial strategy.'" *Id*. at 688-89.

Second, the "prejudice" component of a *Strickland* claim "focuses on the question of whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). To show prejudice under *Strickland*, the petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

**2**

The Court begins with Whitson's claim that his trial counsel should have interviewed and called his sister Michelle as a defense witness.[2]   Whitson presented the state courts with an affidavit from Michelle in which she said that she "wanted to testify at trial, but was not called to testify." (Michelle Whtison Aff. at ¶3, ECF No. 15-11, PageID.721.)   Michelle said that she "visit[ed]" Whitson and his daughters "on a regular basis," and that if she had been called to testify, she would have testified that:

- She never saw "any signs of abuse" or "any signs of fear or intimidation";

- Even though MW and RW "trusted" Michelle and had "plenty of opportunities to confide" in Michelle and tell her that Whitson was abusing them, they never did;

---

[2] The state trial court never addressed this component of Whitson's ineffective assistance claim.  Instead, it appears that the state court misunderstood Whitson's argument and wrongly believed that Whitson wanted his counsel to investigate MW, one of the victims, *not* Michelle Whitson, Whitson's sister. (*See* St. Ct. Op., ECF No. 15-12, PageID.726-727: "Defendant first argues that trial counsel was ineffective for failing to investigate witness MW […].  MW was one of the victims in the case and Defendant's daughter.  Defendant asserts that MW had information that would help Defendant's case, but fails to explain what information MW had or how it would have helped the defense. Defendant has therefore failed to meet his burden of establishing the factual predicate for this portion of his claim of ineffective assistance of counsel.")

- When Michelle asked MW if she was a "virgin," she "said yes in fact she was still a virgin";

- Whitson had become "concerned" about MW's boyfriend, Joseph Sinclair; and

- Whitson once "called her on the phone" as he was confronting MW, RW, Sinclair, and MW and RW's mother about "smoking his medical marijuana."

(*Id.* at ¶¶ 4-8, PageID.721.) Whitson has failed to demonstrate the required prejudice under *Strickland* with respect to Michelle's proposed testimony.

First, Whitson has failed to show a reasonable probability that the result of his trial would have been different if Michelle had testified that she never saw any signs of abuse, that MW and RW never confided in her that they were being abused, and that MW had told her that she (MW) was a virgin. Both RW and MW testified that Whitson sexually assaulted them in private and that they did not tell anyone – even each other – that they were being abused because they were scared of what Whitson might do. (*See* 9/9/2017 Trial Tr., ECF No. 15-7, PageID.318, 367-368, 370.) Moreover, Whitson's trial counsel elicited testimony from MW and RW on cross-examination that even though they felt safe and comfortable around Michelle, and spent time alone with her apart from Whitson, they never told her about the abuse. (*See id.*, PageID.322, 411-413.) Simply put, Whitson's attorney elicited from MW

and RW much of the testimony Whitson says counsel should have elicited from Michelle concerning a lack of disclosure by MW and RW.  Thus, Whitson has not shown that counsel's failure to call Michelle as a witness to elicit this testimony from her caused him prejudice.

Second, Whitson has failed to show that there is a reasonable probability that the outcome of his trial would have been different if had Michelle testified that she had overheard Whitson argue with MW, RW, and others about smoking his (Whitson's) medical marijuana.  Whitson appears to suggest that this testimony from Michelle would have shown the jury that MW and RW had a motive to falsely accuse him of abuse.  But while Whitson's trial counsel did not elicit testimony about the specific confrontation that Michelle allegedly overheard, counsel did present evidence to the jury that MW and RW had a strong motive for falsely accusing Whitson of abuse.  More specifically, counsel presented evidence that Whitson ran a successful medical marijuana business and that Whitson kept tens of thousands of dollars from that business in a lockbox in the family's home.  And counsel elicited testimony from both MW and RW that they knew about the existence of that money. (*See*, *e.g.*, *id.*, PageID.354-355, 419-421.)    Finally, during closing arguments, Whitson's counsel told the jury that MW and RW falsely accused Whitson of abuse so they could steal that money and go on a shopping spree: "We believe it was a fight over the money because [MW and RW] knew that there was in that lock box

18

all of this money and they had an opportunity to separate [Whtison] from this money and then go on a spree." (9/14/2015 Trial Tr., ECF No. 15-9, PageID.608-612.) Thus, the jury was aware that MW and RW had a possible motive to falsely accuse Whitson of abuse.  Counsel thus did not fail to present evidence of a motive, and Whitson has not shown a reasonable probability that counsel's failure to present additional motive evidence from Michelle would have changed the result of the trial.

Finally, Whitson has not shown that there is a reasonable probability the result of his trial would have been different if Michelle had testified that Whitson did not like MW's boyfriend, Joseph Sinclair.  Whitson appears to argue that this testimony would have provided an alternative or second motive for MW and RW to falsely accuse him of assault.  But Whitson's trial counsel elicited testimony that Whitson did not like Sinclair directly from MW on cross-examination.  More specifically, MW acknowledged during her testimony that Whitson did not like Sinclair and said that he "didn't want [MW] hanging around him because [Whitson] believed [Sinclair] was a thug and a bad influence." (9/9/2015 Trial Tr., ECF No. 15-7, PageID.422-423.)  And MW admitted that Whitson's feelings and behavior toward Sinclair made her "angry" and led to her confronting Whitson. (*Id.*)  Thus, the testimony Whitson says Michelle could have provided was already in evidence. Whitson therefore did not suffer prejudice under *Strickland* when his trial counsel failed to present this same testimony from Michelle.

For all of these reasons, Whitson has not persuaded the Court that there is a reasonable probability that the outcome of his trial would have been different if his trial counsel had spoken to Michelle and called her as a witness at trial.

**3**

Next, Whitson says that his trial counsel was ineffective when counsel did not ask Sinclair about whether MW was a virgin when he (Sinclair) first had sex with her. Whitson insists that had Sinclair been asked that question, "there is a reasonable probability that [Sinclair] could have said, 'yes, [MW] was a virgin." (St. Ct. Mot. for Relief from Judgment, ECF No. 15-11, PageID.700.) And Whitson says that if his counsel elicited that testimony, it would have created reasonable doubt that he had sexually assaulted MW. (*See id.*)

But Whitson has failed to show prejudice with respect to his trial counsel's questioning of Sinclair. First, Whitson has neither presented any evidence nor made an offer of proof to support his contention that Sinclair would have testified that MW was a virgin. Second, Whitson has not explained how Sinclair would have had a basis for knowing whether MW was a virgin or not. Finally, to the extent that Sinclair would have said that the basis of that knowledge came from MW herself, MW telling Sinclair that she was a virgin would have been consistent with her own testimony that she did not tell anyone, even her own sister, about Whitson's abuse.

For all of these reasons, Whitson has not shown a reasonable probability that the outcome of his trial would have been different had his counsel asked Sinclair about MW's virginity.

**4**

Whitson next says that his trial counsel unreasonably failed to address issues related to his alleged sexual relationship with NS in two respects.   The Court disagrees.

First, Whitson says that once it became apparent that NS would not appear at trial, his trial counsel should have moved for a mistrial (or for some other form of relief).   Whitson seems to claim that he suffered prejudice when the jury heard a preview of NS's prejudicial testimony and when, due to NS's non-appearance, he was not able to attack NS's version of events by cross-examining her.   He says that his attorney performed deficiently when he failed to seek to remedy this prejudice.

Whitson has not shown that he suffered prejudice from NS's non-appearance and his attorney's subsequent failure to seek a mistrial based upon the prosecutor's description of NS's anticipated testimony during opening statement.   The state trial court cured any potential prejudice related to those issues when it instructed the jury to presume that if NS had appeared as a witness, her testimony would have been unhelpful to the prosecution: "[NS] is a missing witness whose appearance was the responsibility of the prosecution. You may infer this witness's testimony would have

21

been unfavorable to the prosecution's case." (9/14/2015 Trial Tr., ECF No. 15-9, PageID.626.)   Whitson has not provided any reason to believe that the jury was unable to follow this instruction. *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000); *Gajda v. Wolfenbarger*, 483 F. App'x 205, 206-07 (6th Cir. 2012) (explaining that "the court's subsequent instruction vitiated any resulting prejudice, since we presume that jurors follow the instructions they receive").   Thus, because the trial court instructed the jury that it could infer that NS's testimony would have been unfavorable to the prosecution, Whitson has not shown prejudice from his counsel's handling of NS's non-appearance.

Second, Whitson says that his counsel should have objected when the prosecution introduced evidence about Whitson's sexual relationship with NS through the testimony of other witnesses.   But Whitson has failed to show that his attorney had a basis on which to object to the admission of that testimony.   Whitson appears to argue that his trial counsel should have objected to this testimony as inadmissible under the Confrontation Clause of the Sixth Amendment. (*See* ECF No. 14-15, PageID.869-870.)   However, he has not explained how the admission of this testimony violated the Confrontation Clause.   And it appears to the Court that most, if not all, of the testimony at issue did not implicate the Confrontation Clause at all. For instance, Christina Meach, MW and RW's mother, testified briefly that Whitson had a sexual relationship with NS when NS was around fourteen years-old. (*See*

9/10/2015 Trial Tr., ECF No. 15-8, PageID.467.)  Meach told the jury that she knew

about that sexual relationship because, among other things, (1) Whitson told her

about it himself and (2) she personally heard Whitson and NS engaging in sexual

activity.  There is no reason to believe that the admission of that testimony – by

Meach, who was present in court and subject to cross-examination by Whitson's

lawyer – violated the Confrontation Clause.  Thus, Whitson's lawyer did not perform

deficiently in failing to object to this testimony on Confrontation Clause grounds.

Moreover, Whitson has not persuaded the Court that there is a reasonable probability

that the outcome of his trial would have been different if his counsel had secured the

exclusion of the references to his relationship with NS.  Simply put, those references

did not play a major role in the trial, and their significance paled in comparison to

the direct testimony from victims MW and RW.

For all of these reasons, Whitson is not entitled to relief on the component of

his ineffective assistance of counsel claim related to NS.

**5**

Finally, Whitson says that his appellate counsel was ineffective when counsel

failed to raise on appeal the ineffective assistance of trial counsel claims identified

above.  Whitson cannot prevail on that claim.  As explained above, all of his

ineffective assistance of trial counsel claims lack merit, and it is not ineffective

assistance of counsel for an appellate lawyer to omit from appeal a meritless claim

23

of ineffective assistance of trial counsel. *See Martin v. Mitchell*, 280 F.3d 594, 606 (6th Cir. 2002).

For all of these reasons, Whitson is not entitled to federal habeas relief on his ineffective assistance of counsel claims.

## IV

In order to appeal the Court's decision, Whitson must obtain a certificate of appealability. To obtain a certificate of appealability, a petitioner must make a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court **DENIES** Whitson a certificate of appealability because jurists of reason could not debate the Court's conclusion that Whitson failed to demonstrate an entitlement to habeas relief.

Although the Court declines to issue Whitson a certificate of appealability, the standard for granting an application for leave to proceed *in forma pauperis* on appeal is not as strict as the standard for certificates of appealability. *See Foster v. Ludwick*, 208 F.Supp.2d 750, 764 (E.D. Mich. 2002). While a certificate of appealability requires a substantial showing of the denial of a constitutional right, a

court may grant *in forma pauperis* status on appeal if it finds that an appeal is being taken in good faith. *See id*. at 764-65; 28 U.S.C. § 1915(a)(3); Fed. R. App. 24 (a). Although jurists of reason would not debate this Court's resolution of Whitson's claims, an appeal could be taken in good faith. Therefore, Whitson may proceed *in forma pauperis* on appeal.

**V**

Accordingly, for all the reasons stated above, the Court (1) **DENIES WITH PREJUDICE** Whitson's petition for a writ of habeas corpus, (2) **DENIES** a Whitson a certificate of appealability, and (3) **GRANTS** Whitson permission to appeal *in forma pauperis*.

**IT IS SO ORDERED.**

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated:  November 17, 2023

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on November 17, 2023, by electronic means and/or ordinary mail.

s/Holly A. Ryan
Case Manager
(313) 234-5126